**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

SARAH MARTIN, et al.,            )
                                 )
         Plaintiffs,             )
                                 )
    v.                           )        No. 4:23-CV-1037-RHH
                                 )
BRIAN BINGAMAN, et al.,          )
                                 )
         Defendants.             )
                                 )

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Defendants Centurion of Missouri, LLC ("Centurion") and Cassandra Hosea, LPN's ("Hosea") Motion to Dismiss Plaintiffs' Fourth Amended Complaint with prejudice. (ECF No. 85.) The motion has been fully briefed and is ripe for decision. For the reasons stated below, the Defendants' motion is granted in part and denied in part.

**I.    Background**

For purposes of the pending motions to dismiss, all facts alleged in the Fourth Amended Complaint are accepted as true and viewed in the light most favorable to Plaintiffs. *Waters v. Madson,* 921 F.3d 725, 734 (8th Cir. 2008).

The present case arises from the death of Plaintiffs' son, Christopher Bennett ("decedent") on March 29, 2023, while he was a detainee housed in the Transition Center of St. Louis, operated by Missouri Department of Corrections ("DOC"). Plaintiffs allege all Defendants violated decedent's rights under the Eighth and Fourteenth Amendments of the United States Constitution by denying him reasonable medical treatment that resulted in his death, and Defendants Centurion and Hosea are also subject to liability for statutory wrongful death medical negligence.

At all times relevant to this action, Defendants Graf and Jenkins were Correction Officers at the Transition Center of St. Louis and the shift supervisors on duty in the hours leading up to the decedent's death. Defendant Bingaman was a Correction Officer and Duty Officer at the Transition Center of St. Louis.

Defendant Centurion provides medical health services for correctional centers across Missouri, including the Transition Center. Defendant Hosea, a Licensed Practical Nurse ("LPN"), was a contracted employee from Centurion who was employed at the Transition Center from February 27, 2023, until her termination on May 16, 2023. LPN Hosea was on duty at the Transition Center during the hours leading up to the decedent's death.

DOC was aware the decedent had a history of significant brain/head injury, seizures, and concussions, and other medical vulnerabilities. The decedent had prior medical episodes while in custody at the treatment center in January and February 2023, and both custody and medical staff were aware the decedent had a history of drug overdose.

On March 28, 2023, at approximately 7:26 p.m., the decedent was found on his bunk, noncoherent and responding slowly to directives and questions. Vomit was seen on the floor next to his bunk. EMS arrived to provide care, and Centurion medical providers were not involved. The decedent was transported to St. Louis University Hospital for evaluation. He was discharged with a probable diagnosis of opiate overdose and altered mental status, with verbal instructions to bring the decedent back if his symptoms worsened.

After the decedent returned to the Transition Center, his symptoms worsened and he complained to staff, asking for medical assistance. During the hours leading up to his death, decedent vomited or coughed up blood, cried and screamed, had difficulty standing or walking, showed signs of seizure, and otherwise displayed signs of medical distress. An offender in a

neighboring cell heard the decedent screaming and asking for help when staff came to the decedent's door during the hours leading up to his death.

At some point that evening, the decedent was placed in restraints and locked in an administrative segregation holding cell (or a "Temporary Administrative Segregation Confinement" (TASC) room), which is a cell intended for punishment or containment of residents who are being disruptive or violent. Plaintiffs allege that a port in the cell door should have been left open to ventilate the cell, regulate the cell's temperature, and allow staff to observe the decedent's condition. However, the port was closed for the majority of the timeline leading up to the decedent's death.

The TASC unit was staffed by a physician, psychiatrist, nursing staff, and drug counselors; however, only Defendant Hosea produced an incident report based on her clinical interactions with the decedent. Defendant Hosea did not record any medical records or document any consultations with an RN or other advanced medical providers. Plaintiffs allege that LPNs in Missouri must work under the supervision of a registered nurse and advanced providers such as a physician, physician assistant, or nurse practitioner. Plaintiffs further allege that an LPN is limited in duties to provide basic patient care by gathering patient information and taking vital signs, blood pressure, pulse, respiration, and pulse oximetry, and observes patients, charts, and reports changes in patient conditions to the physician or nurse practitioner, documenting all patient contact in the medical record and conferring with physicians, nurse practitioners, and physician assistants.

A "Code 16" is a medical alert code used at the Transition Center and defined by the DOC as "a designated radio call for medical emergency." Multiple Code 16s were issued in the hours leading to the decedent's death, including at 12:11 a.m., 12:25 a.m., 12:47 a.m., and 2:53 a.m.

Until the last Code 16, the codes were cancelled or overridden by officers on duty and/or Defendant Hosea.

First, a Code 16 was called from 12:11 to 12:15 a.m. after the decedent was observed seizing and vomiting, but Defendant Jenkins cleared the Code 16 after Narcan was administered and the decedent was restrained. At approximately 12:25 a.m., Officer Berthier observed that decedent had vomited in his cell, with possible blood, and thereafter had a seizure. A Code 16 was called, and a call was placed from Defendant Graf to Defendant Bingaman. Officer Berthier called Defendant Jenkins by phone to relay information, and a Code 16 was called at 12:47 a.m. Defendant Hosea and corrections officers responded to the Code 16 but did not enter the cell, which Hosea stated was due to the instructions of corrections officers on duty. Defendant Hosea observed the decedent vomiting a brownish substance, and Officer Taylor observed the decedent shaking and with blood coming from his mouth. Decedent appeared to be in and out of consciousness, having seizures and vomiting. Defendant Hosea stated the decedent's behavior was from previous episodes and it would wear off, and that the decedent was fine and he "does this all the time." Corrections officers did not enter the cell because Defendant Hosea said the decedent was "fine." Defendant Hosea did not go into the cell to evaluate the decedent during the 12:47 a.m. Code 16. The Code 16 was cleared by Defendant Jenkins, who later stated to investigators that, despite Defendant Hosea's response, EMS should have been called. Defendant Graf told investigators that Defendant Hosea did not appear to know what she was doing.

Decedent was observed on camera having three (3) additional seizures between 1:21 a.m. and 2:00 a.m. with staff continuing to check on the decedent through the cell door, but no Code 16s were called. At 2:51 a.m., staff attempted to communicate with the decedent but he was unresponsive. Staff initiated a final Code 16 at 2:53 a.m., and life saving measures began. During

4

the Code 16, Officer Johnson handed the Automated External Defibrillator ("AED") to Defendant Hosea, who appeared to not know how to operate it. EMS was finally called, but the decedent was pronounced dead shortly thereafter. The decedent was only examined once in his cell by a nurse between midnight and when he was found unresponsive and EMS was called. During the hours leading up to his death and following his return from SLU Hospital, the decedent endured a half dozen or more seizures but received medical attention only following his initial seizure. No one entered his cell again until he was found unresponsive and CPR was performed.

The St. Louis City Medical Examiner found the decedent had a history of seizures and displayed seizure-like activity on video prior to death. The Medical Examiner concluded the cause of death was "Chronic Seizure Disorder; Epilepsy" and the manner of death was "Natural."

Plaintiffs initially filed this lawsuit in state court against Defendants Precythe, Sarchett, Bingaman, and John/Jane Does 1 through 5. (ECF No. 3.) On August 21, 2023, Defendants removed the matter to this court, and Plaintiffs subsequently filed a First Amended Complaint, adding Defendants Graf, Jenkins, and Taylor as defendants. All named defendants moved to dismiss the First Amended Complaint. On July 18, 2024, the Court granted in part and denied in part the dismissal, and dismissed Defendants Precythe, Sarchett, and Taylor from the suit entirely. Plaintiffs filed a Second Amended Complaint, and the Court issued a Case Management Order on October 8, 2024. On February 11, 2025, the Court granted Plaintiffs leave to file a Third Amended Complaint, adding Defendants Centurion and Hosea as parties. (ECF Nos. 58, 59.) New Defendants Centurion and Hosea moved to dismiss the Third Amended Complaint, and in response, Plaintiffs requested leave to file a Fourth Amended Complaint. Plaintiffs' Fourth Amended Complaint was filed on April 29, 2025. (ECF No. 82.) Defendants Centurion and Hosea then filed the present motion to dismiss on May 13, 2025. (ECF No. 85.) On June 6, 2025, Plaintiffs

filed a Motion for the Court to Accept Counsel Declarations and attached the sworn declaration of counsel and an expert report to the motion. (ECF No. 90.)

## II.    Standard

To survive a Rule 12(b)(6) motion, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Iqbal*, 556 U.S. at 679. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.    Discussion

Defendants Centurion and Hosea move to dismiss Counts I and II of the Fourth Amended Complaint. Count I is a claim for "failure to provide medical care and treatment/wrongful death/deliberate indifference" in violation of 42 U.S.C. § 1983 against all Defendants. Count II is

a claim pursuant to RSMo § 538.210 for medical negligence resulting in death against Defendants Centurion and Hosea.

### A.    Section 1983 Constitutional Violation (Count I)

Defendants first argue that they are entitled to qualified immunity from Plaintiffs' Section 1983 deliberate indifference claim. A public official[1] is entitled to qualified immunity unless: (1) their conduct violated a constitutional right, *and* (2) that right was clearly established. *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (citations omitted). Qualified immunity is "appropriate where no reasonable fact finder could conclude that the facts when viewed in a light most favorable to the plaintiff show that the officers' conduct violated a clearly established constitutional right." *Id.* (citations omitted). It is "well established that [d]eliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment."[2] *Langford*, 614 F.3d at 459 (alteration in original) (internal quotations and citations omitted).

To establish a constitutional violation based on deliberate indifference, Plaintiffs must demonstrate that decedent "suffered from an objectively serious medical need" and that Defendants had "actual knowledge of that need but deliberately disregarded it." *Barton v. Taber*,

---

[1] Notably, Defendants' briefing does not recognize that a private entity such as Centurion must first establish it is entitled to assert qualified immunity under § 1983. Defendants fail to discuss the impact, if any, of *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604 (8th Cir. 2021), in which the Eighth Circuit held that contract medical care providers at a detention facility were not entitled to qualified immunity. The Court weighed policy considerations and concluded that "[b]ecause this court has found no firmly rooted history of immunity, and the purposes of qualified immunity, on balance, do not favor extending immunity, these medical defendants, as employees of large firms "systematically organized to perform a major administrative task for profit," are not entitled to assert the defense of qualified immunity." *Id.* at 622.

    Here, even assuming Defendants are eligible to assert a qualified immunity defense, their briefing only addresses whether Plaintiffs allege a constitutional violation, not whether the conduct violated a clearly established constitutional right. Therefore, qualified immunity is denied at this stage. Nevertheless, the undersigned will address whether Plaintiffs' allegations are sufficient to state a claim for a constitutional violation.

[2] A pretrial detainee's claims are evaluated under the Fourteenth Amendment, and he is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Therefore, a detainee's Fourteenth Amendment claim of deliberate indifference is analyzed under the deliberate indifference standard for an Eighth Amendment violation. *Id.*

908 F.3d 1119, 1124 (8th Cir. 2018) (citations omitted). *See Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013) ("A plaintiff claiming deliberate indifference must establish objective and subjective components." (citation omitted)).

In moving for dismissal, Defendants do not argue that Plaintiffs fail to allege the decedent had a serious medical need or that they knew of the serious medical need, but rather, Defendants contend that Plaintiffs fail to state a claim because the allegations reflect a mere disagreement with the course of medical treatment which does not rise to the level of constitutional deliberate indifference.

Under the subjective prong, to show deliberate indifference, the official "must know[ ] of and disregard[ ]" the inmate's serious medical need. *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (alterations in original) (internal quotations omitted), *quoting Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Generally, the actor manifests deliberate indifference by intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Id.* (internal quotations and citations omitted). A plaintiff can also show deliberate indifference in the level of care provided by showing grossly incompetent or inadequate care, or showing a defendant's decision to take an easier and less efficacious course of treatment. *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").

### 1. Claim against LPN Hosea

Turning to Plaintiffs' allegations as to Defendant Hosea, Plaintiffs allege she is a licensed practical nurse who saw the decedent in the hours leading up to his death. Defendant Hosea

responded to a Code 16 called at 12:47 a.m. and observed the decedent vomiting a brownish substance, but did not enter the decedent's cell and instructed corrections officers not to enter his cell. Defendant Hosea told the corrections officers his vomiting and seizures were from previous episodes and would wear off and that the decedent was "fine and "does this all the time." Instead of providing medical treatment or calling EMS, the Code 16 was cleared. The Court finds Plaintiffs have sufficiently alleged that Defendant Hosea was aware of the decedent's serious medical need, and that she unlawfully delayed medical treatment and/or failed to take steps to properly evaluate and treat the decedent. *Mitchell v. Saint Louis Cnty., Missouri*, No. 24-2579, 2025 WL 3483903, at *5 (8th Cir. Dec. 4, 2025) ("Nurse Heitman's treatment—giving a Tylenol to a patient who could barely stand or speak—bordered on no treatment at all. To accept Defendants' argument as a basis for dismissal would, effectively, imply that a medical professional who provides *any* treatment cannot be deliberately indifferent. Our precedent says otherwise."); *see also Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (delay in treatment can rise to the level of an Eighth Amendment violation, but plaintiff must prove with evidence "that the delay in his treatment had a detrimental effect"); *Rudiger v. St. Francois Cnty., Missouri*, No. 4:22 CV 1103 RWS, 2023 WL 5748439, at *7 (E.D. Mo. Sept. 6, 2023) (rejecting nurse's argument that her treatment may have been inadequate or negligent but did not amount to deliberate indifference because "deliberate indifference may be found where medical care is so inappropriate as to evidence intentional maltreatment") (quoting *Fourte v. Faulkner County, Ark.,* 746 F.3d 384, 387 (8th Cir. 2014)). At this stage in the proceedings, the Court finds Plaintiffs have stated a viable § 1983 claim as to Defendant Hosea in Count I.

### 2. Claim against Centurion

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to maintain a § 1983 claim against a corporate entity, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (discussing a § 1983 claim against a prison medical provider); *see also Burke v. North Dakota Dept. of Corrections and Rehabilitation*, 294 F.3d 1043, 1044 (8th Cir. 2002) (a medical contractor for a jail may be held liable under § 1983). A corporate entity can be liable under 42 U.S.C. § 1983 for a failure to train or supervise its employees where: (1) the entity's training practices are inadequate; (2) the entity was deliberately indifferent to the rights of others in adopting those practices such that the failure to train reflects a deliberate or conscious choice by the entity; and (3) an alleged deficiency in the entity's training practices actually caused the plaintiff's constitutional deprivation. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). To be deliberately indifferent, a corporate entity must have "notice that its procedures were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996). Ordinarily, this is shown by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

In Count I, Plaintiffs assert Defendant Centurion was deliberately indifferent to the decedent's serious medical needs in failing to properly staff the unit with qualified medical personnel, failing to properly train and monitor Defendant Hosea, and failing to have proper procedures in place for Hosea to consult with RNs or physicians. Defendants argue that Plaintiffs' Complaint only alleges a single instance of misconduct, and an isolated instance of alleged misconduct is not sufficient to establish *Monell* liability against Centurion. Plaintiffs respond that

"[a] prior pattern of unconstitutional conduct need not be plead;" rather, "single-incident liability" is available in cases alleging inadequate training of nurses in a correctional setting.

Plaintiffs rely on *Shadrick v. Hopkins Cnty., Ky.,* 805 F.3d 724 (6th Cir. 2015) to support their contention that "single-incident liability" is sufficient. In *Shadrick,* the Sixth Circuit stated that a plaintiff "can establish a single violation of federal rights, accompanied by a showing that [the medical services contractor] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Id.* at 739. The Sixth Circuit explained this mode of proof is available "in a narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Id.* (internal quotation omitted).

The undersigned is not persuaded by Plaintiffs' argument for several reasons. As an initial matter, *Shadrick* is not controlling precedent, and Plaintiffs have not identified any authority to suggest that the Eighth Circuit recognizes single-incident liability against a medical services contractor. Moreover, the *Shadrick* court made its decision on summary judgment. With the benefit of a more fulsome record, the *Shadrick* court's analysis "focus[ed] on the adequacy of SHP's *training program*," wherein the Court was able to determine whether SHP failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation. *Id.* at 738 (internal quotation omitted) (emphasis in original). Specifically, the Sixth Circuit found that (1) there was "no indication" that defendants "designed and implemented any type of ongoing training program for its LPN nurses;" (2) nurses' "superiors did not give feedback or regular evaluations to let them know whether they performed appropriately;" (3) there was a "blanket inability of the [ ] nurses [ ] to identify and discuss the requirements of [the] written policies governing their work;" (4) there was open acknowledgement that nurses "followed an

undocumented policy and custom of providing medical assistance only if an inmate asked for it, despite the existence of written policies, procedures, and treatment protocols mandating that nurses take particular actions at particular times," and (5) plaintiff "traced the lack of adequate training and supervision to the top of [the] organization," which included the on-site nursing manager who admitted that "she was not familiar with the [ ] policies she was specifically designated to enforce," and the President who was "not college-educated or medically trained, and [ ] could not explain the differences in the permitted scope of medical practice for LPNs and RNs." *Id.* at 740-41.

Here, Plaintiffs have not alleged facts similar to the *Shadrick* facts. Plaintiffs' Fourth Amended Complaint does not contain factual allegations to support there was a failure to train or supervise nurses, or that there were policies or a lack thereof that resulted in the inadequate training of Defendant Hosea. While Plaintiffs contend a single incident is sufficient, the Sixth Circuit requires that a single constitutional violation is accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation. *See, e.g., Black v. City of Royal Oak*, No. 23-12371, 2024 WL 4220711, at *13 (E.D. Mich. Sept. 17, 2024) (acknowledging single-incident liability is narrow and the plaintiff must also assert a failure to train, as plaintiff "cannot establish a custom solely by pointing to the facts of his own case"); *Britt v. Hamilton Cnty.*, 531 F. Supp. 3d 1309, 1342 (S.D. Ohio 2021) (distinguishing *Shadrick*), *aff'd,* No. 21-3424, 2022 WL 405847 (6th Cir. Feb. 10, 2022). Plaintiffs present no allegations to support the conclusory allegation that Centurion failed to properly train and monitor Defendant Hosea, and the Complaint contains no allegations regarding failures to train nurses or LPNs generally and how Centurion's practices or omissions were inadequate and likely to result in a violation of constitutional rights. More importantly, this Court

is bound by *Ulrich,* and therefore, Plaintiffs' conclusory allegations lacking specific examples of inadequate training or supervising practices beyond Hosea's encounters with decedent are insufficient to support a claim against Centurion. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) ("Generally, an isolated incident of alleged police misconduct ... cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983."); *see also Hackney v. St. Louis Cnty.*, No. 4:22 CV 410 CDP, 2022 WL 4130797, at *2 (E.D. Mo. Sept. 12, 2022) ("The fact that Corizon employed the nurses who allegedly failed to provide him with constitutionally adequate medical care does not make Corizon liable under § 1983."); *Taylor v. St. Louis Cnty.*, No. 4:24-CV-00034-AGF, 2024 WL 3413263, at *7 (E.D. Mo. July 15, 2024) ("Plaintiff's allegations are conclusory, and he does not assert specific instances or provide specific examples of inadequate training or supervising practices that could support an inference of a failure to train or supervise."). Therefore, Count I is dismissed as to Centurion.

### B.    State Law Medical Negligence (Count II)

Count II asserts a claim for medical negligence resulting in death pursuant to Missouri Revised Statute § 538.210. *See Ordinola v. Univ. Physician Assocs.*, 625 S.W.3d 445, 449 (Mo. banc 2021) ("Medical negligence actions remained a common law claim until the General Assembly amended certain statutes in 2015."). The elements of the statutory claim are "that the health care provider failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession" and "that such failure directly caused or contributed to cause the plaintiff's injury or death." Mo. Rev. Stat. § 538.210.1.

As an initial matter, the parties' briefing conflates sovereign immunity and official immunity. Defendants argue they are protected by *sovereign* immunity such that Count II should be dismissed. Plaintiffs respond with a discussion of *official* immunity and whether Defendant

Hosea's conduct was ministerial or discretionary in nature. In Defendants' reply, they address the discretionary vs. ministerial discussion, but never actually argue that Defendant Hosea is entitled to official immunity, maintaining she is protected by sovereign immunity. (ECF No. 86, pp. 5-6; ECF No. 91, pp. 3-4.)

### 1. Sovereign Immunity and Official Immunity

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the propriety function and consent exceptions, sovereign immunity is the rule and apples to all suits against public entities." *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019) (citing *Metropolitan St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 914 (Mo. Banc 2016)). Sovereign immunity does not apply to the employees of government entities. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008), *as modified on denial of reh'g* (Sept. 30, 2008) ("Although sovereign immunity is a tort protection for government entities, **not their employees**, public employees are covered by two different government immunity doctrines: The official immunity and public duty doctrines.") (emphasis added). The official immunity doctrine protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. *Id.* Therefore, to the extent Defendants argue that the medical negligence claim against Defendant Hosea is barred by sovereign immunity, the motion is denied on this basis because public employees are not protected by sovereign immunity.

Missouri law provides statutory exceptions to sovereign immunity, including as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the

amount of and for the purposes covered by the insurance purchased. Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers plaintiff's claim. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

Here, the Fourth Amended Complaint alleges that "[u]pon information and belief, Defendant Centurion has liability insurance applicable to the claims set forth against it herein and applicable to the actions of agent and employee, Defendant Cassandra Hosea." (ECF No. 82, ¶ 105.) Defendants argue, without citation to any legal support, that Plaintiffs' "mere general allegation" of the existence of insurance does not trigger the waiver of sovereign immunity, and if there is a waiver, it only exists to the extent of the applicable policy limits, which was not addressed in the Complaint. The undersigned agrees that under Missouri law, sovereign immunity is only waived to the extent of and for the specific purposes covered by the insurance. *See Holesapple v. Missouri Highways & Transportation Comm'n*, 518 S.W.3d 836, 840 (Mo. Ct. App. 2017). However, Defendant's argument does not constitute a basis for dismissal of the claim. If Defendant wishes to dispute whether an insurance policy exists or whether Plaintiffs' recovery may be limited based on an applicable policy, that is a matter for summary judgment. The Court finds Plaintiffs' allegation is sufficient to allege a waiver of sovereign immunity as to the tort claims against Defendant Centurion pursuant to the insurance exception set forth above. Defendant's motion is denied on this basis.

Whether Defendant Hosea is entitled to official immunity is a different question. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from

their performance of ministerial acts." *Brandy v. City of St. Louis*, 75 F.4th 908, 917 (8th Cir. 2023) (citing *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 585 (8th Cir. 2006)). Official immunity does not apply when a public official (1) fails to perform a ministerial duty required by law or (2) acts in bad faith or with malice. *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024).

Here, Defendant Hosea argues she is entitled to sovereign immunity, not official immunity. Official immunity is only mentioned once in her reply brief (ECF No. 91, p. 3), in response to Plaintiff's argument that Hosea's actions were ministerial in nature. This reference fails to meet Defendant's burden of proving official immunity applies, and the Court is under no obligation to address whether Defendant Hosea is entitled to official immunity at this time. *See, e.g., Tidwell v. Gibson*, No. 21-3457, 2022 WL 2840309, at *1 (8th Cir. July 21, 2022) ("Tidwell also waived review of any deliberate-indifference claims against Dr. Smith because he failed to raise those claims in his opening brief, and we will not address arguments raised for the first time in his reply brief."); *Powell v. St. Francois Cty.*, No. 4:14-cv-1230, 2016 WL 695674 at *2 (E.D. Mo. Feb. 19, 2016) (stating "a court generally will not consider an issue raised for the first time in a reply brief."); *Kirt v. Fashion Bug # 3253, Inc.*, 479 F. Supp.2d 938, 948 n.4 (N.D. Iowa 2007) (stating "[r]aising a new issue in a reply brief, however, generally does not require the court to consider that issue."); *see also Kemp v. McReynolds*, 621 S.W.3d 644, 654 (Mo. Ct. App. 2021) ("In cases where the public official's duties are found to be discretionary, the issue is typically litigated upon a motion for summary judgment.").

### 2. Mo. Rev. Stat. § 538.210 Affidavit Requirement

Defendants Centurion and Hosea argue that Plaintiffs' claim for medical negligence should be dismissed due to Plaintiffs' failure to file a health care affidavit in compliance with Mo. Rev. Stat. § 538.225. (ECF No. 85, ¶ 32.) In response to the motion to dismiss based on failure to file

the affidavit, Plaintiffs filed a motion to accept counsel's declaration and attached counsel's affidavit and an expert report to the motion. (ECF No. 90.) The parties dispute (1) whether the affidavit is required in federal court, and (2) if it is required, whether Plaintiffs' affidavit  was timely.

Section 538.225 requires a plaintiff alleging personal injury or wrongful death against a health care provider to

> [F]ile an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

Mo. Rev. Stat. § 538.225.1. The plaintiff must file this affidavit no later than ninety days after filing their petition, unless the court orders an extension not to exceed an additional ninety days if good cause is shown. Mo. Rev. Stat. § 538.225.5. If the plaintiff fails to file an affidavit, the court must dismiss the action against the moving party without prejudice. Mo. Rev. Stat. § 538.225.6.

The parties first dispute whether Missouri's health care affidavit requirement applies in federal court. Under the *Erie* doctrine, jurisdiction based on diversity of citizenship and pendent jurisdiction over supplemental state law claims requires federal courts to apply state substantive law and federal procedural law. *See Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 237 (E.D. Mo. 2004) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998)). Defendants assert that the affidavit requirement is substantive because the court has held that Section 538.225 is "outcome determinative, and a failure to apply the statute can lead to forum shopping and inequitable application of state law." (ECF No. 92 at 2) (citing *Smith*, 225 F.R.D. at 241). However, Plaintiffs argue that the affidavit requirement is procedural, relying on two cases where a federal district court found the

requirements of Section 538.225 to be procedural and not substantive. *See K.C.W. by Weldon v. United States Dep't of Veterans Affs.*, No. 16-00381-CV-W-GAF, 2017 WL 5992468, at *4 (W.D. Mo. Aug. 15, 2017) (finding plaintiff's failure to file an affidavit within ninety-days did not warrant dismissal of her medical malpractice claim under the Federal Tort Claims Act (FTCA) because Section 538.225 is a matter of state procedural law that is inapplicable to FTCA claims); *Est. of Beelek v. Farmington Missouri Hosp. Co., LLC*, No. 4:10-CV-2068-CDP, 2011 WL 4008018, at *5 n.3 (E.D. Mo. Sept. 8, 2011) (citing *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 508 (Mo. 1991) (en banc); *White v. Tariq*, 299 S.W.3d 1, 4 (Mo. Ct. App. 2009)) ("I believe that the mandatory dismissal provision of § 538.225 is procedural, and so does not apply in this federal court."). (ECF No. 89 at 15.)

This Court finds that Missouri's health care affidavit requirement is substantive law. In *Smith*, the court explained that Section 538.225 was designed to dismiss "meritless suits against health care providers" rather than "'merely [] apply a new procedural rule.'" *Smith*, 225 F.R.D. at 241 (quoting *Chamberlain*, 210 F.3d at 161). The court further stated that because the "statute does not conflict with the Federal Rules," applying the affidavit requirement in federal court "'would not disrupt any essential characteristic of the federal system.'" *Id.* at 242 (quoting *Connolly v. Foudree*, 141 F.R.D. 124, 129 (S.D. Iowa 1992)). This Court follows the reasoning of *Smith*, finding the affidavit requirement is mandatory in federal court. *See also Keating v. Smith*, 492 F. App'x 707, 708 (8th Cir. 2012) (citation omitted) (rejecting plaintiff's argument that Section 538.225 does not apply "merely because he filed suit in federal court"); *Mosley v. Chen*, No. 4:24-CV-01654-MTS, 2025 WL 1305738, at *2 (E.D. Mo. May 6, 2025) (stating "the Court must apply § 538.225 to Plaintiff's medical negligence claim").

Plaintiffs next argue that if the health care affidavit is required, the Court should deny Defendants' Motion to Dismiss because Plaintiffs filed the affidavit on June 6, 2025, after Defendants raised the affidavit requirement in the pending motion. Plaintiffs contend that they timely filed the affidavit thirty-eight days after the Fourth Amended Complaint was filed on April 29, 2025. (ECF No. 90 at 1.) Plaintiffs further argue that if the Court finds the ninety-day clock started running upon the filing of their Third Amended Complaint on February 11, 2025, good cause exists to grant an extension. (ECF No. 90 at 1–2.) The undersigned finds that February 11, 2025, triggered the ninety-day clock because the Third Amended Complaint was the first time Plaintiffs brought their medical negligence claim against Defendants Centurion and Hosea. (ECF No. 59, ¶¶ 120–29.) Therefore, Plaintiffs' ninety-day deadline expired on May 12, 2025, rendering their June 6, 2025, affidavit untimely.

Plaintiffs allege that good cause exists for this Court to grant an extension because Defendants "did not raise their argument regarding statutory compliance until their most recent Motion to Dismiss."[3] (ECF No. 90 at 2.) Courts have reasoned that good cause may exist for an extension if plaintiffs do not have access to the necessary medical information regarding cause of death at the time of commencing an action. *See Est. of Beelek*, 2011 WL 4008018, at *5 (finding good cause when plaintiffs filed an affidavit 134 days after filing their petition because plaintiffs "had to file their [negligence] claim against the hospital without direct knowledge of the events leading up to [the decedent's] death and without a coroner's report stating a definitive cause of death"). Good cause may also exist if plaintiffs lack financial resources to pay for a legally qualified health care provider's opinion. *See Smith*, 225 F.R.D. at 242 (granting a 45-day extension

---

[3] Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint did not raise the failure to comply with Section 538.225 as a basis for dismissal. (ECF Nos. 67, 68.)

after determining plaintiff's "financial inability to obtain a professional opinion may constitute good cause").

Here, the Court finds that Plaintiffs have not met their burden to establish good cause. As an initial matter, Plaintiffs do not merely seek an extension of time, because their ninety-day deadline expired *before* they filed their motion with a proposed affidavit attached. The Court construes the "motion to accept" the affidavit as a motion for leave to file out of time. *See Villines v. Gen. Motors Corp.*, No. 00-0613-CV-W-2-ECF, 2001 WL 36102766, at *7 (W.D. Mo. Aug. 27, 2001) (explaining that if an extension is sought after the deadline expires, it is a motion for leave to file out of time after plaintiffs' counsel sought three extensions past all three deadlines). Moreover, Plaintiffs' suggestion that "their good faith argument that the statute is inapplicable" constitutes good cause is unavailing. Plaintiffs' only supportive case, *Estate of Beelek*, states that the court believed *the mandatory dismissal provision* of the statute is procedural, not the affidavit requirement itself. *See* 2011 WL 4008018, at *5 n.3. Additionally, as Plaintiffs themselves point out, despite finding the dismissal provision to be procedural, the *Beelek* court required Plaintiffs to comply with the affidavit provision. *Id.* at *5 (finding plaintiffs "satisfied their obligations under § 538.225"). This is consistent with other courts within this district that have required an affidavit in compliance with the statute. *See, e.g.*, *Todd Jeude, Plaintiff, v. Ste. Genevieve County Memorial Hospital et al., Defendants. Additional Party Names: Dr. Teena Sharrock*, No. 1:24-CV-00100-ACL, 2025 WL 2710070, at *5 (E.D. Mo. Sept. 23, 2025) (acknowledging the Eighth Circuit has "squarely rejected" plaintiff's argument that the § 538.225 affidavit is procedural); *Mosley*, 2025 WL 1305738, at *1–2 (citing *Smith*, 225 F.R.D. at 242) ("[C]ourts have long held that affidavit-of-merit requirements—like the one imposed by the State of Missouri—are substantive in nature and must be applied"); *Drummer v. Corizon, LLC*, No. 4:16-CV-01170-AGF,

2018 WL 3475475, at *2 (E.D. Mo. July 19, 2018) (quoting *Tracy v. SSM Cardinal Glennon Children's Hosp.*, No. 4:15-CV-1513 CAS, 2016 WL 3683000, at *2 (E.D. Mo. July 12, 2016)) ("The language of section 538.225 unambiguously requires: (1) plaintiffs to file an affidavit in medical negligence cases; and (2) trial courts to dismiss without prejudice any such action if the affidavit is not filed.").

Nor is the Court persuaded by Plaintiffs' alternative suggestion of good cause—that Defendants did not raise their argument regarding statutory compliance until their most recent Motion to Dismiss. A defendant does not owe a duty to inform a plaintiff of the statutory requirements applicable to plaintiff's claim. As discussed above, other courts within this district have adhered to Section 538.225, and Plaintiffs were responsible for following this obligation in federal court upon asserting a medical negligence claim. Because Plaintiffs have not met their burden to establish good cause exists to allow Plaintiffs to file their affidavit more than ninety days after filing their Third Amended Complaint, Count II is dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Centurion and Hosea's Motion to Dismiss Plaintiffs' Fourth Amended Complaint (ECF No. 85) is **GRANTED in part and DENIED in part,** as set forth above. Count I of the Fourth Amended Complaint is **DISMISSED** as to Defendant Centurion. Count II of the Fourth Amended Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for the Court to Accept Counsel Declarations (ECF No. 90) is **DENIED**.

Dated this 19th day of December, 2025.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE